I call the appeal of Vanderbeek and Delmaro, this is Barefoot and Bridgewater. Comrower? Good afternoon, your honors. May it please the court, Stewart Comrower, Cole Schatz, myself, Foreman, and Leonard for the appellants. And your honors, at this time I wish to request three minutes for rebuttal. Granted. Your honor, the issues on this appeal are relatively narrow and simple. We are dealing here today with whether a stipulated damages provision in a commercial sale contract should be upheld as the bankruptcy court and the district court did. May I interrupt to ask, was the $250,000 distributed or is it still held someplace? It is being held, your honor, by either the debtor's attorney or by counsel for the indenture trustee for the creditors, but it is being held. Thank you. The standard of review on this appeal is well known. Your honors review the lower court's findings on a de novo basis because the issue before the court is one of law. When you make your determination, the appellants implore the court to consider the following very, very compelling facts. First, before the breach, the seller had received and processed a competing offer for $7.1 million, which was $100,000 more than the appellant's $7 million offer. And that offer was a company... For our purposes, it would be much more useful if you argued those facts in connection with the New Jersey standard here, which requires and which places the burden on you. You've got a presumption here that's irrevocable. You've got to place the presumption and you've got to place the burden on you to overcome that presumption with respect to unreasonableness either at the time of formation and or at the time of breach. That is correct, your honor, and I shall do that. All right. Let's talk first... What do you say New Jersey law is on that question? The New Jersey law, thank you, your honor, is very well settled. It was laid down in the Wasserman's case of the Supreme Court as well as MetLife's case. I don't know that I'd use the word well settled, but go ahead. Well, it's well settled to the extent that the cases uniformly say you look at the... You use reasonableness as a touchstone and then you consider the totality of circumstances. Those circumstances in the cases include, I assume among other factors, the intent of the parties, the bargaining, relative bargaining power of the parties, whether or not the... And most significantly to this appeal, your honor, we argue the actual damages that were incurred at the time of the breach. And that is the legal test into which you would plug these various factual matters. Absolutely. Would you say that the law of New Jersey is at least sufficiently clear that there really wasn't anything here for the district court to have to predict? That to the extent he thought he had to predict, this really was not necessary. He needed only to apply the standard that we already have in the two New Jersey cases. I believe that that statement is correct, your honor. There was nothing to predict because at the time of the breach, which was in court before bankruptcy judge Ferguson on January 24th, 2005, simultaneous with the breach, there was a competing bid for $1.1 million more than my client's contract price. Let me try to narrow something here because it's bothered me. Are you seriously contending that the $250,000 in liquidated damages was unreasonable at the time of formation? At formation? I can make that argument and I am. Good lawyers can make just about any argument. Are you serious about, does this pass the laugh test? $250,000 came from you folks, down from a million. It does. I have to concede. It would not pass the laugh test if I said that my clients didn't bang their shoe on the table and request this clause. They did. But the case law is clear that even where the parties have an intent as to what or try to form an estimation as to what the damages would be and stipulate to the damages because of that, if they're wrong, then the clause can be thrown out. But your honor, these are sophisticated parties for heaven's sake. They are. And that's why there's a presumption of reasonableness, which I have to rebut, as opposed to... And how do you rebut the fact that, as Judge Smith had asked, that the sum of $250,000 was a reasonable liquidated damage at the time of the formation? Particularly when you ask... Unreasonable. How do you rebut the fact that it's reasonable? Particularly when your clients ask for it. I rebut it in several ways, your honor. First, the bankruptcy court and the district court did not focus at all on the declaration of the appellant, which is in the record, that the clause was not remotely the product of some analysis as to what damages would be. Where in the law is an analysis, an economic analysis, required anywhere? Where in the two major New Jersey cases you rely upon, is there even a suggestion that some kind of analysis, by which I assume you are suggesting some sort of objective economic analysis, beyond the negotiation of the parties required? The case law is clear that the damage clause, in order to be held to be reasonable, even if it's asked for by one party, has to comport with an estimation, some analysis as to what damages would be. This was only 3.5% of the purchase price. That is correct, your honor. Negotiated between sophisticated business entities, one in Chapter 11. Your honor, I am on the ropes with respect to... Sometimes, counsel, it's best, and I'm speaking really for myself, but sometimes it's best to realize that dog won't hunt, and let me pick my argument that really has some meat to it. And rather than trying... Did I interrupt? Why aren't you simply arguing that at the time of the breach it was unreasonable, because by that time you knew there was a windfall of $1.1 million? Well, because I fell into the trap of trying to answer the question as to why it may have been reasonable at the time of the contract formation, and that's where I was trying to go. Seriously, it was obviously reasonable at the time of the formation, but the circumstances changed. I thought your argument was based on the circumstances changing. No, Judge, my argument, picking up your honor's point, is that at the time of the breach it was absolutely unreasonable, because every factor that may have warranted a finding of reasonableness at contract formation was no longer there. And specifically, and most importantly, and there's a good body of case law that this single factor in and of itself ends the analysis that there was no actual damages. We have cited both the Wasserman's case, the appellate division case in Nohe, the unreported decision annexed to our reply brief in Cinchon. But that's not a requirement of the cases, is it? What the cases say is it can't be a penalty, right? The cases say that in the absence of actual damages you cannot uphold this clause. That is our argument. I understand that's your argument. Tell me what any of the cases say that if there are no actual damages then the liquidated damages provision is presumptively unreasonable. Please cite me to that line. If I may, Your Honor, I think Wasserman states that, Counselor. At least my notes indicate that Wasserman states that at 137 New Jersey 254. That is correct. And the Nohe case at 296 New Jersey Super 177 says the state of law throughout the United States strongly supports the proposition that a seller who has suffered no harm cannot retain a deposit even in the face of a liquidated damages clause. It is also the central component of the restatement second of contracts which is incorporated by the New Jersey Supreme Court, the appellate division, and various other jurisdictions which focuses on an assessment of actual damages. And even if that factor was not dispositive in and of itself, Your Honor, the other factors articulated by the case law are. At the point of time of the breach, there was an absolute certainty as to what the damages for the seller would have been based upon two factors. My client escrowing the entire $7 million purchase. Excuse me. Again, I don't want to interrupt you, but I'm searching Wasserman which I've read a couple of times, and you and perhaps Judge Dowd are seeing language in it that I have not seen. I'm looking at page 107 of the opinion that says actual damages moreover reflect on the reasonableness, reflect on the reasonableness of the party's prediction of damages. And I may, so I. Judge. This is fundamental in my understanding, so I want you to. The cases do not say that if there are no actual damages, you end the analysis and the clause gets thrown out. Well, that's what I asked for, whether it was per se unreasonable. Aren't there costs merely attended to having to litigate this question? There are, Your Honor. So we can't be talking about a test that says if there are no actual damages, this is then unreasonable, can it? Because automatically in this process, if the issue ends up being litigated, there's going to be some cost to that. That is correct. But that cost, whatever it is, we would say is far outweighed in this case. Is that in the record? In case intensive. The costs aren't in the record because the appellees have not put them in. But what is in the record is that the windfall is $1.1 million. So unless those costs of this appeal and the litigation below exceed $1.1 million, there has been no damage to the seller or its creditors. The language in Wasserman's that I would refer to. So we understand then, or so I'm understanding your position, you do agree that you must, to show unreasonableness, demonstrate no actual damages plus something else, right? Or is it enough simply to show? I respectfully don't agree. I think that the case law fashions a very strong policy without saying in verbatim. Then we're back to your argument. What I thought you had agreed a little bit ago was not the law, and that is some per se rule that says if there are no actual damages, then a provision for liquidated damages becomes per se unreasonable. I believe that the case law does apply that. It does say that. I think that reading the case law, you could make a very strong argument that that's what the case law provides, other than in a bright line determination in the words your Honor used. But if I may, your Honor, just put aside that issue. But let me stop you for a second. But hasn't the New Jersey Supreme Court said pretty clearly, and you talked about it, you look at the totality of the circumstances, but you look at reasonableness. Haven't they said that the modern trend is towards assessing reasonableness either at the time of contract formation or at the time of breach? That's correct. And if they have said that, it seems to me in this case, measuring reasonableness at either one of these mileposts, you have a very, very heavy burden to overcome by showing that at the time of formation that $250,000 was not reasonable. I agree. So how do you do that? I do it by focusing on the time of the breach. And at the time of the breach, there was 7 million escrowed, a competing offer, and an offer that closed. What's that have to do with the parties deciding at the time of formation, we're not going to worry about fighting about damages in the future. We're going to say that the damages, if this contract is breached, is $250,000. Nothing. How can you win, then, with that answer? Because the courts can consider and must consider reasonableness at both junctures. That's not what Wasserman says. Yes. That's not what, even though it's the Superior Court's memorandum. Is it disjunctive or is it in the conjunctive? It is in the disjunctive. You consider it at either or. If the clause at issue is unreasonable. That's not what you mean, is it? If it passes muster of reasonableness initially, that is, at contract formation time, we don't need to reach the reasonableness measure. I just spoke. That's not what I meant. But it does not say the modern trend is towards assessing unreasonableness either at the time of contract formation or at the time of breach. It says the trend is towards assessing reasonableness. Correct. The appellees would have it that if the contract clause is reasonable at either juncture, we go no farther. But that's what Wasserman says. No, Wasserman, the analysis of looking at actual damages and the modern view and the case law that says hindsight is better than foresight requires a determination that if it's unreasonable at either juncture, the clause is stricken, not stricken. Where do you find that? What case do you find that? I find that in. It is not in Wasserman. It's in Nopi. It's in Cintron. It's in the cases from other jurisdictions we've cited. It's in the restatement. The restatement uses an example, Your Honor, of a contract to build a grandstand at a racetrack. And if the construction company was late, they would have to pay a liquid damage amount of $1,000 a day, $1,000 per day. They were 10 days late so that there was a breach and there was a damage measure under the contract of $10,000. The restatement says that if the racetrack operator could not get permission to operate for 30 days after the breach, there were no damages. So you have to look at whether there were actual damages at that juncture to throw out the stipulated damages provision. And we think it is prevalent throughout the case law. But even if we throw that factor out and that actual damage factor is not dispositive, at the time of the breach, all of the other factors overwhelmingly support throwing out this provision. There was a $1,000,000 windfall that has already been distributed to creditors. There has been no harm. The bankruptcy judge's decision was based on punitive, result-oriented considerations. When the bankruptcy judge spoke of my schedule was twisted in a pretzel with the appellants, the dilatory tactics of the appellants are just as much a part of the circumstances as the happenstance of the higher bid, which we submit was not a happenstance. It was there and there was a deposit. So to affirm the lower court, Your Honor, we submit would be contrary to the basic tenets that damages should be compensatory and not penal. And this would affect an improper penalty if the court's below a firm. Judge Dowd, do we want to get you in here and give you an opportunity to ask some additional questions? No, I'm satisfied with the response. Thank you, Your Honor. All right. Thank you. Mr. Felton? May it please the Court. My name is Samuel Felton, the firm of Orloff, Loewenbach, Steiffman & Siegel, attorneys for Appellee Brian Barefoot. With me at counsel table is Carol LaFawn from the firm of LaBeouf, Land, Green & McRae, representing Norfolk Bank. The outage is scheduled to argue. I think one fact on the record needs to be clarified, and that is the breach here occurred not on January 24th, on January 14th. That was the extended termination date of the closing. January 24th was the date of the auction. January 14th is when no closing occurred. That is correct. That is the time of the breach. Despite the grant of an extension until January 14th. In my view, my suggestion is that that is the time of the breach. Before we even get to that, Appellee submits that, consistent with upholding a presumption, giving force to a presumption, under the MetLife case, if the test of reasonableness is met at the outset of the contract when it was formed, the inquiry would not need to go further. Indeed, in the MetLife case, the Supreme Court of New Jersey looked at what the prognostication of future damage was. It didn't get into what the actual damages were at the time of the breach. That's why it is our position that as long as, at the time of formation, the contract had a valid stipulated damages clause, the Court need not look further because it's reasonableness at the formation or at the time of the breach. It is not in the conjunctive. All right. You're maintaining it's in the disjunctive? Yes. Even if it were in the conjunctive. Would you agree, however, that under the facts of this case, that allowing Bridgewater to retain the deposit without having suffered any actual damages is a windfall? I do not under the law of New Jersey because at the time of the breach, January 14th, the anticipated harm was the same as it was when the contract was formed. There was no written contract, nothing concrete on which Bridgewater could legally say, okay, nothing happened at the time of the breach. I don't think that was my question. I'm sorry. I said under the facts of this case, which also include the fact that there was a much higher bid finally accepted, that the acceptance of the deposit constitutes a windfall. Well, I wouldn't say a windfall. I would say it wouldn't contemplate to include the parties entitled to the benefit of the bargain. Okay. You would call it something else. I would call it the benefit of the bargain, which was imposed on the debtor by appellants. This is an unusual case where the party who imposes the liquidated damages clause wants to get extracted from it. All right. You maintain that the breach occurred on January 14th. That's the extended closing, yes. At what point does it become clear that the purchase with the new purchaser will, in fact, be completed? I think on January 24th because the new purchaser said that— So up until that point, it's not certain that there's a done deal. Absolutely not. That's why they had a bidding. If you were right, up to that point, there's no windfall then. That is correct. Is that your argument? That is correct. As of the time of the breach, nothing was carved in stone. There were proposed offers, there were deposits made, but there was no binding contract. As a matter of fact, the DJD offer specifically ended on January 12th. During the course of the January 7th conference call with Judge Ferguson, the attorney for DJD said, you know, we may not be there after January 12th. I believe that's also in the record in some correspondence exchanged between Mr. Bauer and Mr. Uralovitz on December 30th. I also wish to highlight the fact that the liquidated damages clause is 3.5 percent of the purchase price. It's reasonable under any context. What do you make out of some language in Noe? Because I've been referring to Wasserman and since hearing your adversary and asking him some questions, I've had a chance to go back and look not only at Wasserman but Noe. Of course, Wasserman is a Supreme Court decision. It was 1994. And along comes Noe in 1997. And it's a superior court decision. So maybe the law of New Jersey isn't quite as clear as we would like it to be, especially based on this. And it appears at page 385 of the decision that, however, the present state of the law throughout the United States, as summarized in the following statement, and I won't read that statement, strongly supports the proposition that a seller who has suffered no harm cannot retain a deposit even in the face of a liquidated damages clause. What do we make of that? That's a more recent pronouncement than Wasserman. It's an intermediate court of New Jersey. It is pre-MetLife beginning with 2. In Noe, the court made it clear that just before making remarks, Your Honor, just reading the record, it dealt with a consumer contract as opposed to a commercial contract. And that was the distinction drawn by both the bankruptcy judge and the district court judge. Here, there was, I think the distinction to be drawn is that between damages and harm, here there was actual potential damages, anticipated harm, but there was also some actual harm in the form of, I think as Judge Smith pointed out, the attorney's fees and having to fix up the breach and make a new arrangement with DJD. So there was actual harm caused by the breach to repair and to try to mitigate that. And that is contained in the record, at least to some extent, in the distribution order itself. Some modest amount of counsel fees was allocated to Mr. Bauer's firm. I'm not sure that was the entirety of it, but that's some support in the record for some harm accruing as a result of the breach. One point I wanted to raise with the court, I'm not sure it was raised specifically in the parties' briefs, but this asset purchase agreement and the liquidated damages clause was contained within a confirmation order of the bankruptcy court. And I think a suggestion could be made that the appellant did not proceed procedurally correctly here and should have sought relief under Bankruptcy Code 9024, which is basically Rule 60 of the Federal Rules of Civil Procedure. And because the asset purchase agreement was contained within a confirmation plan, recourse should have been made under 11 U.S.C. 1144 to revoke the order of confirmation. So I raise the question with the court as to whether or not there's a jurisdictional issue that needs to be addressed by the court before it even reaches the merits of the liquidated damages argument. And this court touched upon that in a case authored by Judge Rendell at In re Mencor, which is at 98 Fed APPX 93, April 2004. From a policy perspective, we think the liquidated damages clause in this context should be upheld because to accept the appellant's position on the facts here would undermine the ability of debtors in bankruptcy cases to dispose of their assets without getting into litigation over liquidated damages. It has the potential of tying up plan confirmations where the plan is one of a liquidation of the debtor's assets. If something happens as happened here, we can... Bankruptcy courts will find themselves litigating issues of liquidated damages as opposed to allowing the sales to go through and the creditors to be paid and the plan to be consummated. If the court has no further questions, I conclude my remarks. Judge Dowd, any questions? No, nothing further. Thank you. Thank you. Thank you, Mr. Feldman. Mr. Kumher? Thank you, Your Honor. Very briefly, even if the breach did occur on January 14th, at the time of the breach, there was still $7 million in escrow, a commitment to bid by my clients, a $7.1 million offer accompanied by a $100,000 deposit, a clear intent at that time that my client expected to get the deposit back if it was not the successful offeror, and an absolute sea change in the shift of bargaining leverage between my clients and the seller, where my client had no leverage at that point and was imploring the bankruptcy court to accept its money for $7 million. This was not a buyer that ran away from the deal, breached the contract, and is now coming before the court to say, please give me my deposit. This is a buyer that implored the court to accept its $7 million and is now trying to prevent the creditors who have bargained. The benefit of the bargain was the plan of reorganization that was confirmed that the creditors voted on. They got a $1.1 million more, less some minor attorney's fees and incidentals, than the benefit of their bargain. Now they want another $250,000. I still want, I'm still curious about how you can maintain that there was something that would amount to a windfall as of the date of the breach. And especially if you conceded that the breach was on January 14th, or for that matter, any date up to, up any date before January 25, when the deal had not been completed. The money was not in hand. It had not been consummated. And based on the totality of circumstances and the facts of this particular case, was it reasonable to conclude, is it reasonable to conclude that $250,000 is a fair estimate on January 14th of the damages that would flow from a breach? Why isn't it? What was the best other offer that Bridgewater had prior? At which time, Your Honor? At the time on January 14th of the contract formation? No, prior to the deal that fell through. There had been a previous offer for this entity. And what was that offer? What was that offer? There were five. The amount of that offer? There were five. Were any of them of an amount consistent with the 7.1? The offers ranged from $5.75 million, which was $1.25 million less than the contract price, up to $6,675,000. They were all less. They were all less. They were all less. So every deal up to that point that had been offered was less than the 7.1. Correct. And those deals came in with no competitive bidding, no information as to what solicitation, and a requirement, at least in one of them, that the general manager of the debtor required 17.5 percent of a participation in the buyer, and another employee of the debtor required 20 percent. So we have 20 percent. Was there not then uncertainty about whether or not this new offer was going to close? I believe there was absolutely no uncertainty at all that the offer would close at the time of the breach. None. What about the consensual plan proponent agreement? It limited the ability of anyone who was interested in ARENA from bidding on any subsequent auction if the ARENA transaction was aborted. And I made that argument before Judge Ferguson in the bankruptcy court, but the judge ruled that all bets were off, and my clients could bid as well as Gruen and Burland, who were the other two members of the purchaser. Didn't that present some uncertainty? None, Your Honor, because the judge allowed that bidding, and there was a motion. I know debtors' counsel was of a mind at that time that the limitation provision had been waived, right? The limitation provision? That that limitation provision in the consensual plan proponent agreement had been waived? Yes, Your Honor, that's correct, by virtue of having filed it. But Vanderbeek's counsel indicated otherwise at the January 25th hearing. That was me, and I argued to the court that if you don't let my client close, why should you let other people who signed that agreement close? Why doesn't that very series of events suggest uncertainty here about the deal closing? And I submit there was zero, respectfully, there was zero uncertainty that the deal would close at the time of the breach, based upon a $7 million escrow, the other offer, and an oral statement by Alan Adler, who was appellant Vanderbeek's personal counsel, that if DJD did not bid, Mr. Vanderbeek or the entity would bid. I don't know if Your Honor has any further comments. I see my red light. Judge Dowd, do you have any further questions of counsel? Nothing further. Thank you. All right, counsel. Thank you. Thank you very much. We thank all of counsel for their arguments, and we will take this matter under advice.